UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Mitchell L. Mosley,

    Debtor.

Case No. 7-11-15299 TS

Sierra Chemicals, LLC,

    Plaintiff,

v.

Adv. Pro. No. 12-1166 T

Mitchell L. Mosley,

    Defendant.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on the Plaintiff's Motion For Partial Summary Judgment (the "Motion"),[1] Defendant's response thereto (the "Response"), and Plaintiff's supporting reply ("Reply"). The gist of the Motion is that the findings and conclusions of the arbitrator in a pre-bankruptcy arbitration between the parties are entitled to preclusive effect and are sufficient for a § 523(a)(6) nondischargeability judgment in Plaintiff's favor. The Court has

---

[1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539.

reviewed the arbitrator's well-reasoned decision and concludes that his findings of fact are entitled to preclusive effect. However, the arbitrator did not make a finding about Defendant's intent to injure Plaintiff, an essential element of § 523(a)(6) nondischargeability. Because of that, the Motion must be denied.

## II. FACTS

The Court finds that there is no genuine dispute about the following facts, which either are undisputed or else are the arbitrator's findings:

1. Plaintiff employed Defendant from September 2005 until his termination in January 2009.

2. On or about January 25, 2008, Plaintiff entered into an employment contract with Defendant (the "Employment Contract").

3. The Employment Contract prohibited Defendant from using any confidential or proprietary trade secret information obtained during the term of his employment or at any time thereafter.

4. Defendant represented when entering into the Employment Contract that he would not use any confidential or trade secret information obtained during the term of his employment.

5. Plaintiff terminated Defendant in January 2009.

6. During his employment Defendant had access to Plaintiff's intellectual property, including confidential, trade secret, and/or proprietary information on the equipment, construction, and techniques used by Plaintiff to build and use its specialized equipment; health, safety and operating manuals; report forms; and marketing techniques.

7. The Employment Contract prohibited Defendant from competing in "fin fan" cleaning within a radius of seventy-five miles of San Juan County for at least one year following any termination from Plaintiff.

8. At the time of his termination Defendant was acting as Plaintiff's Health and Safety Manager and was classified as one of the company's professional employees.

9. Because of an employment infraction on December 12, 2008, which Defendant disclosed to Plaintiff on December 15, 2008, Defendant anticipated he would be fired.

10. Defendant planned to go into competition with Plaintiff once his covenant not to compete expired. When he was able to compete legally Defendant formed Fintech, LLC built a fin fan cleaning trailer, recruited investors and financing, and commenced bidding and servicing fin fan jobs in the San Juan area.

11. Defendant read, understood and negotiated changes to his Employment Contract. Before signing the contract, Defendant understood what he was agreeing to.

12. The Employment Contract prohibits removing and using the confidential information of Plaintiff during and after Defendant's employment. The prohibitions are broad and unambiguous. Defendant agreed he would not take or use manuals, financial information, costs, pricing information, clients lists, or other confidential information.

13. On November 25, 2008, Defendant e-mailed certain of Plaintiff's forms to his personal e-mail. On December 9, 2008, Respondent e-mailed himself a Process Safety Management paper.

14. On Monday, December 15, 2008, Defendant e-mailed Plaintiff's Health and Safety Manual, Employee Policy Handbook, Accident Incident Report Forms and some Safety Inspection Reports to his personal Yahoo account.

15. Defendant eventually used Plaintiff's Employee Policy Handbook and Health and Safety Manual to create Fintech's employee handbook and safety manual.

16. On or about April 15, 2010, Plaintiff brought suit against Defendant in the United States District Court, District of New Mexico, commencing *Sierra Chemicals, L.C. v. Mitchell Mosley, et al.,* Civil No. 10-CV-00362-BB-DJS ("District Court Action").

17. Because of an arbitration clause in the Employment Contract, the matter was referred to binding arbitration.

18. On September 20, 2011, the arbitrator entered an Interim Award (the "Interim Award").

19. As set forth in the Interim Award, the arbitrator found and/or concluded:

   a. Defendant lied during the arbitration;

   b. Defendant intentionally breached the Employment Contract and knew it was wrong when he did it;

   c. Defendant did not violate the New Mexico Uniform Trade Secrets Act; and

   d. Plaintiff did not prove the requisite elements of its common law tort theories.

20. In his final award, the arbitrator awarded Plaintiff a total of $352,997.19, broken down as follows:

| | |
|---|---|
| Breach of contract damages: | $ 10,000.00 |
| Punitive Damages: | $ 15,000.00 |
| Sanctions (net): | $ 10,636.00 |
| Attorney fees: | $244,182.30 |
| Costs: | $ 18,138.28 |
| Arbitration fees and costs: | $ 55,040.61 |
| Total: | $352,997.19 |

21. On December 7, 2011, the District Court entered an Order for Final Judgment in the District Court Action, granting Plaintiff a money judgment against Defendant in the amount of $352,997.19.

### III. DISCUSSION

#### A. Collateral Estoppel.

Collateral estoppel (also known as issue preclusion) applies in dischargeability litigation. *See Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 764 (10th Cir. 1988); *Goss v. Goss,* 722 F.2d 599, 603-04 (10th Cir. 1983) (applying the doctrine in a bankruptcy case); *Taylor v. Jasper (In re Jasper),* 356 B.R. 787, at *4 (10th Cir. BAP 2007), *aff'd*, 312 Fed. Appx 97 (10th Cir. 2008) (unpublished table decision) (same).

The collateral estoppel effect to be given a prior federal judgment is a question of federal law. *Matosantos Commercial Corp. v. Applebee's Intern. Inc.,* 245 F.3d 1203, 1207 (10th Cir. 2001), citing *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497 (2001). The Tenth Circuit's requirements for collateral estoppel are "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Matosantos,* 245 F.3d at 1207, quoting *Dodge v. Cotter Corp.,* 203 F.3d 1190, 1198 (10th Cir. 2000), *cert. denied*, 531 U.S. 825 (2000).[2]

---

[2] New Mexico issue preclusion rules are very similar. Under New Mexico law, a state court judgment is given preclusive effect if (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *See Doe v. Martinez (In re Martinez)*, 2012 WL 1641926, at *6 (Bankr. D.N.M.

Under federal law, arbitration awards confirmed by federal court judgments can form the basis for issue preclusion. *See In re Tam*, 136 B.R. 281, 287 (Bankr. D. Kan. 1992); *In re Selmonosky,* 204 B.R. 820, 824 (Bankr. N.D. Ga. 1996); *Norrell Health Care, Inc. v. Clayton (In re Clayton)*, 168 B.R. 700, 704-05 (Bankr. N.D. Cal. 1994); *Arndt v. Hanna (In re Hanna),* 163 B.R. 918, 923 (Bankr. E.D.N.Y. 1994) ("arbitration proceedings can, but do not necessarily, have preclusive effect in subsequent federal court proceedings"). The same rule generally applies to state court arbitration awards. *See Rex, Inc. v. Manufactured Housing Committee,* 119 N.M. 500, 504, 892 P.2d 947, 951 (1995); *Clay v. New Mexico Title Loans, Inc.,* 288 P.3d 888, 901 (N.M. App.), *cert. denied*, 296 P.3d 1207 (2012) (citing and following *Rex*).

Here, the Court is satisfied that the arbitration has been finally adjudicated on the merits, Defendant was a party, and Defendant had a full and fair opportunity to litigate the issues addressed in the Interim Award. Thus, the arbitrator's findings of fact can form the basis for issue preclusion in this adversary proceeding, so long as they are identical to the facts at issue here.

    B.    <u>Plaintiff's Motion For Judgment on its § 523(a)(6) Claim.</u>

Plaintiff argues that there is no genuine issue of material fact relating to its § 523(a)(6) nondischargeability claim. The elements of a § 523(a)(6) claim are: (1) an injury to the plaintiff or his property; (2) the injury was caused by defendant; (3) defendant's actions were "willful," and (4) defendant's actions were "malicious." *In re Deerman,* 482 B.R. 344, 369 (Bankr. D.N.M. 2012) (collecting cases). Nondischargeability under this subsection requires that the debtor's actions be *both* willful and malicious. *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004).

---

2012), citing *Shovelin v. Central New Mexico Elec. Co-op, Inc.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993).

To be willful, Defendant must have intended the act and intended the harm. *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998) ("[t]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury."). *See also Deerman,* 482 B.R. at 369 (citing *Geiger*). For Defendant's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse. *Deerman,* 482 B.R. at 369 (citing *Bombardier Capital, Inc. v. Tinkler,* 311 B.R. 869, 880 (Bankr. D. Colo. 2004)).

The Tenth Circuit uses a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Regional Medical Ctr. V. Englehart (In re Englehart),* 229 F.3d 1163, at *3 (10th Cir. 2000) (unpublished table decision) ("the 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur"); *In re Militare,* 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011), citing *Tinkler,* 311 B.R. at 878.

In the Tenth Circuit, damages caused by an intentional breach of contract may be nondischargeable under § 523(a)(6). *See Sanders v. Vaughn (In re Sanders),* 210 F.3d 390, at *2 (10th Cir. 2000) (unpublished table decision); *In re Militare,* 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011) (a knowing breach of contract is not necessarily excluded from "willful and malicious" injury). *See also Texas v. Walker*, 142 F.3d 813, 823-24 (5th Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999). There is a split in the case law on this issue. *See, e.g., In re Best,* 109 Fed. Appx. 1, 8 (6th Cir. 2004) (contract claim insufficient to § 523(a)(6) purposes; some tortious conduct must be shown); *In re Jercich,* 238 F.3d 1202, 1206 (9th Cir.), *cert. denied,* 533 U.S. 930

(2001) (same); *Wish Acquisition, LLC v. Salvino,* 2008 WL 182241, *3-4 (N.D. Ill. 2008) (same).

The arbitrator found against Plaintiff on all asserted tort claims, but ruled in Plaintiff's favor on the breach of contract claim. Applying *Sanders v. Vaughn,* the Court holds that the failure of the tort claims is not *per se* fatal to a § 523(a)(6) judgment in the Tenth Circuit.

Nevertheless, the Motion must be denied because there is no evidence before the Court, and no finding by the arbitrator, that when Defendant breached the Employment Contract he either intended to harm Plaintiff or else believed that harm was substantially certain to occur. The Arbitrator found that Defendant intended to breach the Employment Contract and knew it was wrong when he did it. That finding was sufficient to establish the "malicious" element of § 523(a)(6), but not to establish the "willfulness" element.[3] The Court will need to take evidence at trial on this issue.

> In its Reply Plaintiff argues that the "willfulness" element is satisfied because
>
> on the record in this case, no rational trier of fact could find that Defendant's actions were not willful—that is, that Defendant had not intended to harm Sierra by obtaining an unfair competitive advantage over it—when he stole Sierra's intellectual property in violation of the employment contract.

Reply, p. 7. This argument lacks merit, because the only record supporting the Motion consists of the undisputed facts, the arbitrator's interim and final awards, the district court's Order for Final Judgment, and Defendant's affidavit. In the affidavit Defendant avers that he did not intend to harm Plaintiff. The balance of the record is silent on the issue of intent to harm. There may have been evidence presented to the arbitrator on this issue, but it is not part of the record before the Court.

---

[3] The other elements, i.e., an injury suffered by Plaintiff that was caused by Defendant, clearly are established. If Plaintiff prevails at trial, the Court will address Defendant's argument (Response, p. 4) that less than the entire amount of the arbitration award is attributable to willful and malicious injury to Plaintiff.

IV. CONCLUSION

The arbitrator's findings are entitled to preclusive effect and dispose of most of the fact issues underpinning a § 523(a)(6) judgment, but do not address Defendant's alleged willfulness. The balance of the record before the Court is similarly silent on the issue, or supports Defendant's position. The Motion therefore must be denied. Because of that, the Court will not rule on the amount of any potential nondischargeable judgment. The Court will enter an order consistent with this Memorandum Opinion.

_____
Hon. David T. Thuma, United States Bankruptcy Judge

Entered on docket: October 15, 2013.

Copy to:

Jason Bousliman
201 Third Street NW, Suite 1950
Albuquerque, NM 87103

Robert L. Finch
555 E. Main Street
Farmington, NM 87401