UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Mitchell L. Mosley,

    Debtor.

Case No. 7-11-15299 TS

Sierra Chemicals, LLC,

    Plaintiff,

v.

Adv. Pro. No. 12-1166 T

Mitchell L. Mosley,

    Defendant.

## MEMORANDUM OPINION

In this adversary proceeding Plaintiff seeks to have Defendant's debt declared nondischargeable under 11 U.S.C. §§ 523 (a)(4) and (a)(6), and to deny his discharge under 11 U.S.C. § 727(a)(4)(A). The Court conducted a trial on November 5, 2013 and took the matter under advisement. This is a core matter. For the reasons set forth below, the Court declares the amount of $30,000 nondischargeable under § 523(a)(4).

### II.    FACTS

The Court finds the following facts:

1.    Plaintiff does business in the oil and gas industry in various parts of the United States. Among other things, Plaintiff cleans heat exchangers used to heat or cool natural gas, which are sometimes called "fin fans." In 2009, Plaintiff's total revenue was about $2.5 million. This figure increased to about $5 million in 2012.

2. Plaintiff employed Defendant from September 2005 until his termination in January 2009.

3. Defendant started with Plaintiff as an administrative assistant and was eventually promoted to Health and Safety Manager. During his tenure Defendant cleaned fin fans, scheduled fin fan cleaning by Plaintiff's cleaning crews, and helped write various safety procedures, including portions of Plaintiff's Health and Safety Manual ("Safety Manual").

4. Defendant had access to Plaintiff's intellectual property, including health, safety and operating manuals and proprietary information regarding the techniques used by Plaintiff to build and use its specialized equipment.

5. On or about January 25, 2008, Plaintiff entered into an employment contract with Defendant (the "Employment Contract").

6. The Employment Contract prohibited Defendant from using or removing any of Plaintiff's confidential or proprietary trade secret information. The prohibitions are broad and unambiguous. Defendant agreed he would not take or use manuals, financial information, costs, pricing information, client lists, or other confidential information.

7. The Employment Contract also prohibited Defendant from competing in the fin fan cleaning business within a 75 mile radius of San Juan County, New Mexico for one year after employment termination.

8. On December 15, 2008, Defendant disclosed to Plaintiff an employment infraction that occurred several days earlier.

9. On the same day, Defendant emailed the Safety Manual and an employee policy handbook ("Employee Handbook") to his personal Yahoo account without Plaintiff's

knowledge or consent. He wanted to retain a copy of the documents in the event he was terminated and subsequently started his own fin fan cleaning business.

10. Plaintiff terminated Defendant in January 2009.

11. Sometime thereafter, Defendant informed Plaintiff's employee, Mike Dodds, that he planned to start his own fin fan cleaning business. Mr. Dodds sent Defendant information about how Plaintiff bid on fin fan cleaning jobs.

12. After waiting a year after termination, Defendant formed Fintech, LLC ("Fintech"). He built a fin fan cleaning trailer using materials he purchased from the internet, recruited investors and financing, and began cleaning fin fans.

13. Fintech had between four and seven employees.

14. When Defendant formed Fintech, between three and five companies cleaned fin fans in the San Juan area.

15. Fintech operated in the San Juan area because Defendant had lived there for many years with his family.

16. Most customers in the oil and gas industry require industrial cleaning companies to have a written safety manual. Using Plaintiff's confidential materials, Defendant created an employee handbook and a safety manual for Fintech.

17. Defendant continued to operate Fintech through at least the end of 2010.

18. Fintech's gross revenue in 2010 was about $120,000, $110,000 of which came from one customer, Enterprise.[1] There is no evidence that Enterprise was previously Plaintiff's customer.

---

[1] Before working for Plaintiff, Defendant worked in the oil and gas industry for a company called Enterprise. It seems likely that it is the same company.

-3-

19. In 2011, Defendant closed Fintech and began working for MACC Services ("MACC"), another industrial cleaning company.

20. Fintech and/or MACC had gross revenue of roughly $120,000 in 2011, about half of which came from customers in the San Juan area.

21. In 2012, MACC had gross revenue of about $60,000 from customers in the San Juan area.

22. Between January 1, 2013 and November 5, 2013, MACC earned roughly $15,000 from customers in the San Juan area.

23. It is unclear the extent to which Fintech or MACC solicited Plaintiff's customers.

24. Between 2009 and 2013, Plaintiff's gross revenue in the four corners region,[2] which includes the San Juan area, declined from roughly $970,000 to roughly $177,000.

25. On or about April 15, 2010, Plaintiff brought suit against Defendant in the United States District Court, District of New Mexico, commencing *Sierra Chemicals, L.C. v. Mitchell Mosley, et al.,* Civil No. 10-CV-00362-BB-DJS ("District Court Action").

26. Pursuant to the Employment Contract, the matter was referred to binding arbitration.

27. On September 20, 2011, the arbitrator entered an Interim Award (the "Interim Award").

28. As set forth in the Interim Award, the arbitrator found and/or concluded:

    a. Defendant lied during the arbitration;

    b. Defendant intentionally breached the Employment Contract and knew the breach was wrong when he did it;

---

[2] The "four corners" region is compromised of the southwestern corner of Colorado, the northwestern corner of New Mexico, the northeastern corner of Arizona, and the southeastern corner of Utah.

-4-

Case 12-01166-t    Doc 67    Filed 11/13/13    Entered 11/13/13 08:52:21 Page 4 of 14

  c. Defendant did not violate the New Mexico Uniform Trade Secrets Act; and

  d. Plaintiff did not prove the requisite elements of its common law tort theories.

29. In his final award, the arbitrator awarded Plaintiff $352,997.19 in breach of contract damages, broken down as follows:

| | |
|---|---|
| Breach of contract damages: | $ 10,000.00 |
| Punitive damages: | $ 15,000.00 |
| Sanctions (net): | $ 10,636.00 |
| Attorney fees: | $244,182.30 |
| Costs: | $ 18,138.28 |
| Arbitration fees and costs: | $ <u>55,040.61</u> |
| Total: | $<u>352,997.19</u> |

30. On December 7, 2011, the District Court entered an Order for Final Judgment in the District Court Action, granting Plaintiff a money judgment against Defendant in the amount of $352,997.19 ("District Court Judgment").

31. Defendant filed the above-captioned bankruptcy case on December 12, 2011.

32. On September 25, 2013, Defendant filed a declaration attached to a summary judgment response which stated "I did not email or otherwise copy the employment handbook." The declaration was untrue.

### III. DISCUSSION

A. <u>Denial of Discharge Under § 727(a)(4)(A)</u>

Plaintiff argued that Defendant's discharge should be denied under 11 U.S.C. § 727(a)(4)(A), which provides:

(a) The court shall grant the debtor a discharge, unless—

…

-5-

Case 12-01166-t    Doc 67    Filed 11/13/13    Entered 11/13/13 08:52:21 Page 5 of 14

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

"The purpose behind this subsection is to enforce a debtor's duty of disclosure and ensure that the debtor provides reliable information to those who have an interest in the administration of the estate." *Manning v. Watkins (In re Watkins),* 474 B.R. 625, 635 (Bankr. N.D. Ind. 2012), *affirmed,* 2013 WL 3989412 (N.D. Ind. 2013) (*citing Bensenville Community Center Union v. Bailey (In re Bailey),* 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992)).

"To prevail under § 727(a)(4)(A), the [creditor] must show the following elements: (1) that the Debtor made a false statement under oath; (2) that the Debtor knew the statement was false; (3) that she made the statement with fraudulent intent; and (4) that the statement was material." *Rajala v. Majors (In re Majors),* 2005 WL 2077497, at *3 (10th Cir. BAP 2005) (*citing Kaler v. McLaren (In re McLaren),* 236 B.R. 882, 894 (Bankr. D.N.D. 1999)). *See also Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1294 (10th Cir. 1997) (creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath that relates to a material fact); *Watkins,* 474 B.R. at 635 (listing five factors, which are similar to the four *Majors* elements); *Pioneer Credit Company v. Roubieu (In re Roubieu),* 2005 WL 6459370, at *4 (Bankr. N.D. Ga. 2005) (same); *Cole Taylor Bank v. Yonkers (In re Yonkers)*, 219 B.R. 227, 232 (Bankr. N.D. Ill. 1997) (same); *MacLeod v. Arcuri (In re Arcuri),* 116 B.R. 873, 880 (Bankr. S.D.N.Y. 1990) (same).

"The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Garland,* 417 B.R. 805, 814 (10th Cir. BAP 2009) (*citing Job v. Calder (In re Calder),* 907 F.2d 953, 955 (10th

Cir. 1990)) (remaining citations omitted). *See also* Collier on Bankruptcy, ¶ 727.04[1][b], n. 13. "Materiality under Code § 727(a)(4)(A) means that the statement must bear a relationship to the debtor's financial transactions or to the bankruptcy estate, concern the disclosure of assets, or relate to the disposition of assets." *In re Leonard,* 2013 WL 5427889, at *7 (Bankr. D. Kan. 2013).

Section 747(a)(4)(A) cases almost invariably involve allegations that debtors failed to disclose valuable assets, undervalued assets, underreported income, or failed to disclose transfers. *See e.g. In re Warren,* 512 F.3d 1241 (10th Cir. 2008) (failure to disclose prepayments to creditors); *Gullickson v. Brown (In re Brown),* 108 F.3d 1290 (10th Cir. 1997) (failure to disclose automobiles); *In re Calder,* 907 F.2d 953 (10th Cir. 1990) (failure to disclose mineral rights, bank accounts, and monthly income); *Leonard,* 2013 WL 5427889, at *7 ("[T]he failure to list a significant asset is the most frequently established basis for denying discharge under this section.").

Denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor. *Soft Sheen Products, Inc. (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (*citing In re Shebel,* 54 B.R. 199, 204 (Bankr. D. Vt. 1985)). The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor. *Id.* at 364.

Here, Plaintiff argues that Defendant's discharge should be denied because in a September 25, 2013 affidavit Defendant stated he "did not e-mail or otherwise copy the employment handbook." The statement contradicts Defendant's trial testimony and a finding of the Arbitrator. The statement is relevant to Plaintiff's § 523(a)(6) claim and was made in response to Plaintiff's motion for summary judgment on that claim.

-7-

The Court holds that this statement, while apparently false, is not "material" for § 727(a)(4)(A) purposes. Not every false statement warrants denial of the discharge. Defendant's assertion about e-mailing an employment handbook bears no relationship "to the debtor's financial transactions or to the bankruptcy estate, concern the disclosure of assets, or relate to the disposition of assets." *Leonard,* 2013 WL 5427889, at *7. The Court therefore declines to deny Defendant's discharge under § 727(a)(4)(A).[3]

B.   Dischargeability of the Judgment for Breach of Contract Under § 523(a)(6)

Debts arising from a willful and malicious injury by the debtor are excepted from the general discharge. 11 U.S.C. § 523(a)(6). To satisfy his burden under § 523(a)(6), a plaintiff must prove: (1) either he or his property sustained an injury; (2) the injury was caused by debtor; (3) debtor's actions were "willful," and (4) debtor's actions were "malicious." *In re Deerman,* 482 B.R. 344, 369 (Bankr. D.N.M. 2012) (collecting cases). Nondischargeability under this subsection requires that the debtor's actions be *both* willful and malicious. *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004).

To be willful, a debtor must have intended the act and intended the harm. *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998) ("The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury."). *See also Deerman,* 482 B.R. at 369 (citing *Geiger*). For a debtor's actions to be malicious, they have to be intentional, wrongful, and done

---

[3] Plaintiff's § 727(a)(4)(A) claim was originally founded on statements Defendant allegedly made pre-petition and at his § 341 meeting concerning allegedly "concealed or transferred equipment." Plaintiff introduced no evidence at trial about these matters, instead focusing solely on the September 25 statement about the Employee Handbook. Based on this apparent last-minute shift in focus, it appears that, by the time of trial, Plaintiff had little or no evidence to support its § 727(a)(4)(A) claim.

-8-

without justification or excuse. *Deerman,* 482 B.R. at 369 (citing *Bombardier Capital, Inc. v. Tinkler,* 311 B.R. 869, 880 (Bankr. D. Colo. 2004)).

The Tenth Circuit uses a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Regional Medical Ctr. V. Englehart (In re Englehart),* 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."); *Saturn Systems, Inc. v. Militare (In re Militare),* 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011) (*citing Tinkler,* 311 B.R. at 878).

Under some circumstances, damages caused by an intentional breach of contract may be nondischargeable under § 523(a)(6). *See Sanders v. Vaughn (In re Sanders),* 2000 WL 328136, at *2 (10th Cir. 2000); *Militare,* 2011 WL 4625024, at *3 (a knowing breach of contract is not necessarily excluded from "willful and malicious" injury); *Texas v. Walker*, 142 F.3d 813, 823-24 (5th Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999); *N.I.S. Corp. v. Hallahan (In re Hallahan),* 936 F.2d 1496, 1501 (7th Cir.1991). However, "an intentional breach of contract, without more, is [generally] not the type of injury addressed by § 523(a)(6)." *In re Musgrave,* 2011 WL 312883, 11 (10th Cir. BAP 2011). "Intent to injure the creditor [or substantial certainty that injury will occur] must be present." *Id.*

As the Court explained in its Memorandum Opinion entered October 15, 2013, the Arbitrator's findings were sufficient to establish the "malicious" element of § 523(a)(6), but not to establish the "willfulness" element.[4] At trial Plaintiff was required to prove, at the very least, Defendant was substantially certain that Plaintiff would be injured when he breached the

---

[4] The other elements, i.e., an injury suffered by Plaintiff that was caused by Defendant, clearly are established.

-9-

Employment Contract. Plaintiff failed to carry this burden. There is no evidence that Defendant intended to injure Plaintiff, or knew that his actions were substantially certain to cause injury. Rather, the evidence shows that Defendant's motivation was to make a living.

Defendant waited a year, as required by the Employment Contract, before starting Fintech's operations. Further, Plaintiff is a much larger business, with annual revenues ranging from $2.5 to $5 million. In contrast, Fintech generated only $120,000 in revenue during its first year.[5]

Although Plaintiff's revenues in the four corners region declined by roughly $800,000 between 2009 and 2013, there is no evidence that Defendant caused any substantial portion of the decline. Instead, the uncontroverted evidence shows that Defendant generated only modest revenues in the San Juan area during that period.[6]

Plaintiff argues that because Defendant used Plaintiff's manuals, processes, and pricing information in Fintech's business, Defendant necessarily intended to injure Plaintiff. Like the Arbitrator, the Court is unwilling to ascribe such a motive to Defendant. Rather, the Court finds that, like most entrepreneurs, Defendant set out to earn a livelihood rather than to harm competitors.

Further, even if Defendant knew or reasonably suspected that his breach of contract could affect Plaintiff adversely, the Court is "not automatically required … to find 'willful and malicious injury.'" *Door, Bentley & Pecha, CPA'S P.C. v. Pasek (In re Pasek),* 983 F.2d 1524, 1527 (10th Cir. 1993). Improper conduct without a "culpable state of mind" is generally not enough to render a debt arising from an intentional breach of contract nondischargeable under §

---

[5] $110,000 of the gross revenue was from one customer - Enterprise. There is no evidence Enterprise was Plaintiff's former customer.

[6] While the evidence regarding Plaintiff's losses related to the entire four corners region, the evidence regarding Defendant's revenues related to the San Juan area. It is possible that Fintech and/or MACC's revenue in the four corners region was higher than their revenue in the San Juan area.

523(a)(6).  *Id.* (affirming bankruptcy court's determination that intentional breach of noncompetition agreement was not willful or malicious, even where defendant solicited plaintiff's clients); *Musgrave,* 2011 WL 312883, *12 (reversing bankruptcy court's determination that breach of contract was willful and malicious where there was no evidence that defendant intended or anticipated the harm).  *See also Williams v. International Brotherhood of Electrical Workers (In re Williams,* 337 F.3d 504, 511 (5th Cir. 2003) ("[A] knowing breach of contract may be nondischargeable under Section 523(a)(6)" … if there is "*explicit* evidence that a debtor's breach was intended or substantially certain to cause the injury to the creditor.") (emphasis added).

Based on the evidence presented at trial, the Court concludes that Defendant neither intended to harm Plaintiff nor thought his conduct would have that result.  The District Court Judgment, which is based solely on breach of contract, therefore does not come within the § 523(a)(6) exception to dischargeability.

      B.      <u>Dischargeability of the Debt for Embezzlement Under § 523(a)(4)</u>

Debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are excepted from the general discharge.[7]  11 U.S.C. § 523(a)(4). Embezzlement differs from larceny in that "[e]mbezzled property is originally obtained in a lawful manner, while in larceny the property is unlawfully obtained."  *Musgrave,* 2011 WL 312883, at *5.

A creditor may prove embezzlement by showing: (1) his property was entrusted to the debtor; (2) the debtor appropriated the property for a use other than the use for which it was

---

[7] As Plaintiff did not argue that Defendant held the Safety Manual and other documents pursuant to an express or technical trust, the Court will not address defalcation while acting in a fiduciary duty. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996) (under Tenth Circuit law, a fiduciary relationship exists only where a debtor has been entrusted with money pursuant to "an express or technical trust.").

entrusted; and (3) the circumstances indicate fraud. *Bd. of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007)). *See also Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) (embezzlement consists of "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."). Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *Musgrave*, 2011 WL 312883, at *5 (quoting 4 Collier on Bankruptcy ¶ 523.10[2], 523-77 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2009)).

A number of courts have held that under federal law, intangible property can be embezzled. *See, e.g., Digital Commerce, Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 826-27 (Bankr. W.D. Mich. 2004) (debt arising from embezzlement of corporate opportunity was nondischargeable under § 523(a)(4)); *Naturally Me, Inc. v. Attridge (In re Natural Feast Corp.)*, 2006 WL 2311115, *41 (D. Mass. 2006) (debtor's conduct constituted embezzlement for purposes of § 523(a)(4) where debtor appropriated recipes belonging to former employer); *Wallner v. Liebl (In re Liebl),* 434 B.R. 529, 537 (Bankr. N.D. Ill. 2010) (analyzing whether debtor embezzled intellectual property and trade secrets under § 523(a)(4)); *Halliburton Energy Services, Inc. v. McVay (In re McVay),* 461 B.R. 735, 745 (Bankr. C.D. Ill. 2012) (same). New Mexico law would likely yield the same result. *See generally Muncey v. Eyeglass World, LLC,* 2012-NMCA-120, 289 P.3d 1255 (analyzing whether defendant's use of plaintiff's patient files constituted conversion).

Here, Defendant was given the Safety Manual and Employee Handbook as part of his job. On the day he anticipated getting fired, he emailed the manual, handbook, and other documents to his personal Yahoo account without Plaintiff's knowledge or consent. Defendant

then used the documents in his new business. Defendant's conduct constitutes embezzlement for purposes of § 523(a)(4).

It is worth noting that while "conversion of property of another can serve as grounds for nondischargeability under § 523(a)(6), not every conversion constitutes a willful and malicious injury." *Hernandez v. Musgrave (In re Musgrave),* 2011 WL 312883, *11 (10th Cir. BAP 2011). Here, the circumstances under which Defendant removed the materials were fraudulent. As discussed above, however, there is no evidence that Defendant intended to harm Plaintiff. Thus, while Defendant embezzled the Safety Manual and Employee Handbook, the embezzlement does not come within § 523(a)(6).

C. Damages

Although the Arbitrator did not address embezzlement specifically, his fact findings are entitled to preclusive effect. The Arbitrator found that Defendant's removal of the Safety Manual, Employee Handbook, and other documents caused Plaintiff $10,000 in actual damages. The Court therefore concludes that Plaintiff suffered $10,000 in actual damages as a result of Defendant's embezzlement.[8] Further, the Court finds that Plaintiff is entitled to $20,000 in punitive damages.

---

[8] Plaintiff contends that the entire District Court Judgment amount is nondischargeable under either § 523(a)(4) or (a)(6). This argument fails. When a debt is nondischargeable under § 523(a), the accompanying interest and fees generally are nondischargeable as well. *See, e.g., Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996); *Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1131 (8th Cir. 1985). Here, however, the attorney fees and arbitration costs were awarded as contract damages (dischargeable in this case), rather than damages for embezzlement. In fact, the Arbitrator specifically found that "the requisite elements of [Plaintiff's] common law tort theories [we]re not proven on the evidence." There is no basis for awarding attorney fees or arbitration costs to Plaintiff for proving embezzlement for the first time at trial.

-13-

IV.     CONCLUSION

Defendant's obligations to Plaintiffs will be declared nondischargeable under § 523(a)(4), to the extent of $30,000. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate judgment will be entered.


_____
Hon. David T. Thuma
United States Bankruptcy Judge


Entered on docket: November 13, 2013.

Copy to:

Jason Bousliman
201 Third Street NW, Suite 1950
Albuquerque, NM 87103

Robert L. Finch
555 E. Main Street
Farmington, NM 87401